UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.1:24-cr-00006-TRM-CHS |
| | ) | |
| ANTHONY L. WARD | ) | |

**REPORT AND RECOMMENDATION**

**I.   Introduction**

This matter is before the Court upon Defendant Anthony Ward's Motion to Suppress and Memorandum in Support [Doc. 17], in which Defendant seeks to suppress evidence of drug trafficking found in his residence following a search conducted by law enforcement. Defendant contends that the affidavit used to obtain the search warrant failed to establish probable cause to search his residence, and that the ensuing search violated the Fourth Amendment. The District Court referred Defendant's motion to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For reasons that follow, it is recommended that the Motion to Suppress be denied.

**II.   Facts**

Detective Josh Richmond of the Hamilton County Sheriff's Office ("HCSO") prepared an affidavit to obtain a search warrant for Defendant's home located at 6601 Riggins Avenue in Chattanooga, Hamilton County, Tennessee. Detective Richmond swore to the truth of this affidavit on November 22, 2022, in front of Magistrate Ron Powers, a judicial officer of the Hamilton County, Tennessee courts, who then issued the search warrant that same day. The affidavit provides the following relevant information:

- Detective Richmond has been a law enforcement officer since 2013. He has specialized training in "the world of controlled substances." [Doc. 17-1, Richmond Aff. ¶ 2].

- It has been his training and experience that . . . "[s]treet sellers of drugs often carry only a small amount on their persons, again keeping a larger supply nearby" in separate buildings, outbuildings, or rooms. [*Id.* ¶ 2].

- The potential defendant is Anthony Ladarin Ward, a black male born in 1965. [*Id.* ¶ 3].

- The place to be searched is a house located at 6601 Riggins Avenue, Chattanooga, Tennessee. The mailbox is marked with the numbers 6601. [*Id.* ¶ 4].

- The crime being investigated is possession of heroin, hydrocodone and marijuana. [*Id.* ¶ 5].

- A confidential informant (CI#1) provided information to Agents with the Narcotics and Special Investigation Unit ("NSI Agents") of the HCSO that Defendant is currently engaged in the illegal sale and possession of heroin. [*Id.* ¶ 6].

- During surveillance in the last two months, Detective Richmond observed a hand-to-hand transaction between Defendant and another man at the Speedway [gas station] on Shallowford Road. NSI Agents then surveilled Defendant back to the house at 6601 Riggins Avenue. [*Id.* ¶ 7].

- On November 21, 2024, NSI Agents were contacted by "Georgia Authorities" who informed them that they had active warrants for Defendant for conspiracy to distribute heroin. [*Id.* ¶ 8].

- On November 22, 2024, NSI Agents observed Defendant make a hand-to-hand transaction with another person at 6601 Riggins Avenue. [*Id.* ¶ 9].

- NSI Agents saw Defendant leave the house at 6601 Riggins Avenue and travel to 3401 Campbell Street without making any stops. The NSI Agents approached Defendant at 3401 Campbell Street because of the out-of-state arrest warrants and because he was driving on a revoked license. NSI Agents then searched Defendant's vehicle incident to his arrest and found ten hydrocodone pills wrapped in a napkin located in the driver side door handle. NSI Agents found a marijuana blunt in the center console of the vehicle. [*Id.* ¶ 10].

- Defendant lists 6601 Riggins Avenue as his residence on his revoked license that was issued on June 26, 2022. [*Id.* ¶ 11].

Detective Richmond executed the search warrant for 6601 Riggins Avenue the same day it was issued, on November 22, 2024. NSI Agents found suspected fentanyl, marijuana, hydrocodone pills, digital scales, and $9,836 in cash. Subsequently, on January 23, 2024, Defendant Ward was indicted under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) for possession with intent to distribute 40 grams or more of a substance containing a detectable amount of fentanyl.

### III.    Discussion

The Fourth Amendment provides that "no warrant shall issue but upon probable cause, supported by oath or affirmation . . . ." U.S. CONST. amend. IV. To establish probable cause to justify a search warrant, "[t]he affidavit supporting the warrant must contain facts that demonstrate 'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Sumlin*, 956 F.3d 879, 885 (6th Cir. 2020) (quoting *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005)). The Court must consider the totality of the circumstances as set out in the four corners of the affidavit to determine whether the affidavit provides probable cause to believe evidence of a crime will be found at the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 230 (1983) (totality of the circumstances standard); *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971) (Court limited to review of affidavit itself); *Hines*, 885 F.3d at 923 (in considering the totality of the circumstances, "the court is limited to examining the information contained within the four corners of the affidavit") (citation omitted).[1]

In *United States v. Shamaeizadeh*, 80 F.3d 1131, 1136 (6th Cir. 1996), the appellate court described the application of the *Gates* totality-of-the-circumstances analysis as being fluid, with the necessary importance of each factor varying depending upon the weight of the other factors:

> In applying its "totality of the circumstances" test, the *Gates* court identified three factors in determining whether probable cause existed: 1) the basis of the

---
[1] The Fourth Amendment applies to the states through the Fourteenth Amendment. *Soldal v. Cook Cnty*, 506 U.S. 56, 61 (1992).

informant's knowledge; 2) the reliability of the informant; and 3) the corroborative evidence presented by the government. The *Gates* court noted that these factors are not to be analyzed as "separate and independent requirements to be rigidly exacted in every case." *Rather, the reviewing court is to weigh them together in determining whether they form a substantial basis for finding probable cause. The strength of one or more of these factors may compensate for the deficiencies of another factor.*

(emphasis added, internal footnote omitted, internal citations omitted); *see also United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999). The totality of the circumstances must be viewed through "'the lens of common sense,'" *United States v. Christian*, 925 F.3d 305, 310 (6th Cir. 2019) (en banc) (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)). "'Not all search warrant affidavits include the same ingredients;' . . . '[i]t is the mix that courts review to decide whether evidence generated from the search may be used or must be suppressed.'" *Christian*, 925 F.3d at 312 (quoting *United States v. Hines*, 885 F.3d 919, 921-22 (6th Cir. 2018)). Importantly, "[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000). A magistrate's determination of probable cause is due great deference and may be overturned only if the magistrate arbitrarily exercised his authority. *Christian*, 925 F.3d at 311. A warrant must be upheld "so long as the magistrate had a substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing[.]" *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) (quoting *Gates*, 462 U.S. at 236).[2]

Defendant contends that Detective Richmond's affidavit fails to establish probable cause to search 6601 Riggins Avenue. More specifically, he contends that the affidavit is deficient for the following three reasons: (1) the affidavit fails to provide information to verify the reliability of

---

[2] In addition to his Fourth Amendment arguments, Defendant provides a copy of the HCSO operations manual's requirements for a search warrant. Defendant argues Det. Richmond did not comply with the requirements in the manual. That contention, however, has no bearing on the motion to suppress. Here, the Court is concerned only with the Fourth Amendment strictures on searches and the requirement that a search warrant affidavit provide probable cause—within the meaning of the Fourth Amendment—to issue the search warrant.

the confidential informant; (2) the affidavit fails to provide sufficient police corroboration to compensate for a lack of information concerning CI#1's reliability; and (3) the affidavit fails to show a nexus between the alleged criminal activity and the place to be searched.

### A. The Affidavit is Sufficient to Establish Probable Cause

The Court begins by analyzing whether the affidavit provides sufficient information to verify the reliability of CI#1. Where an affidavit relies upon hearsay information from a confidential informant to supply probable cause, "a court must consider the veracity, reliability, and the basis of knowledge of that information as part of the totality of the circumstances for evaluating the impact of the information." *Frazier*, 423 F.3d at 532 (quoting *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003)). Where a search warrant affidavit lacks indicia of the informant's reliability, "courts insist that the affidavit contain substantial independent police corroboration." *Frazier*, 423 F.3d at 532; *see also United States v. Crumpton*, 824 F.3d 593, 616 (6th Cir. 2016) (same).

Here, Defendant correctly points out that the affidavit lacks specific statements from Detective Richmond addressing the veracity and reliability of CI#1; however, while Detective Richmond's affidavit lacks indicia of CI#1's reliability, it does contain "substantial police corroboration of the information provided by CI#1. By way of example, CI#1 advised law enforcement that Defendant was currently engaged in the possession and sale of heroin. Consistent with that information, "Georgia Authorities" told NSI Agents on November 21, 2023, that they had current, outstanding warrants to arrest Defendant for conspiracy to distribute heroin. Defendant objects that Detective Richmond failed to state which "Georgia Authorities" issued the warrant; however, Defendant does not explain how such an omission undermines the weight of this information to the probable cause determination. To the contrary, regardless of whether the

warrants had been issued by state, county, or city authorities in Georgia, the warrants constitute evidence that another judicial officer found probable cause to believe that Defendant was involved in trafficking illegal drugs.[3] *See e.g., Gaines v. United States*, No. 1:02-CR-0039, 1:08-CV-2737, 2013 WL 774207, *7 (N.D. Ohio Feb. 27, 2013) (finding that the defendant's outstanding "arrest warrant" on "drug-related" crimes was part of the Court's calculus in determining the search warrant affidavit supported probable cause).

Defendant also argues that, because the Georgia warrants involved a "conspiracy" to distribute heroin, it is possible that Defendant could have participated in a conspiracy without actually "possessing" the illicit drugs. The Court finds that the information concerning the Georgia warrants provided corroboration that Defendant was likely dealing in illegal drugs. While the information did not provide certainty that Defendant was drug dealing, such certainty is not required. "[P]robable cause is not the same thing as proof." *Christian*, 925 F.3d at 310. "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 311 (citation cleaned up). Probable cause is not a "high bar." *Id.* (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)).

The Court finds that Detective Richmond's inclusion of information in the affidavit concerning the Georgia warrants against Defendant for conspiracy to distribute heroin, corroborates CI#1's representations that Defendant was engaged in the possession and sale of heroin. Beyond that corroboration, the affidavit contained information concerning personal observations by law enforcement during surveillance of Defendant which provided further support that a "fair probability" existed that Defendant was selling illegal drugs. More specifically, the

---

[3] The Court notes that Defendant did not challenge the veracity of Det. Richmond's statement concerning the "active" out-of-state warrants, and, in fact, Defendant states in his brief that he was arrested "on November 22, 2022, based on outstanding warrants issued by Catoosa County, Georgia." [Doc. 17, Defendant's brief at 1].

affidavit provides that within the last two months before the search warrant was issued, Detective Richmond and a group of NSI Agents each observed a hand-to-hand transaction between Defendant and another individual—with one of those transactions occurring on November 22, 2023, the day the search warrant was issued. Hand-to-hand transactions are characteristic of a drug dealer's sale of drugs to an individual customer.

Moreover, the NSI Agents discovered ten hydrocodone pills in Defendant's vehicle after NSI Agents stopped the vehicle to arrest Defendant on the outstanding out-of-state warrants. The Court deduces that this incident in which the hydrocodone pills were found in Defendant's vehicle occurred on either November 21 or 22, 2024, because the NSI Agents were not contacted by "Georgia Authorities" regarding the out-of-state warrants until November 21, 2024. [Doc. 17-1, Richmond Aff. ¶ 8]. The condition in which those ten hydrocodone pills were found—in a napkin hidden in a door handle, rather than in a labeled prescription bottle—reflects a likelihood that the hydrocodone pills were intended for an illegal sale. The discovery of these hydrocodone pills is consistent with Detective Richmond's statement in the affidavit that drug dealers often carry small amounts of drugs for drug transactions while leaving larger stashes of contraband in another place.

In sum, the totality of aforementioned evidence creates a fair probability that Defendant was illegally dealing in controlled substances during the time period that the search warrant was issued. The next question is whether the affidavit established a nexus between illegal drug trafficking activity and 6601 Riggins Avenue so as to justify a search of those premises.

## B. Affidavit is Sufficient to Establish a Nexus between Drug Trafficking and 6601 Riggins Avenue

"In order to establish probable cause, . . . '[t]here must . . . be a nexus between the place to be searched and the evidence sought.'" *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)). The recent en banc decision of *United States v. Christian* discusses at length the issue of nexus between criminal activity and the place to be searched. 925 F.3d 305, 311 (6th Cir. 2019) (en banc).

In *Christian*, the defendant asserted that the search warrant affidavit failed to connect illegal drug trafficking to the place to be searched, i.e., the defendant's residence at 618 Grandville Avenue in Grand Rapids, Michigan. The *Christian* affidavit provided the following: a "credible and reliable informant" advised the officer-affiant that Christian was dealing drugs. *Id.* at 309 (quoting the affidavit). The informant also provided information about other drug dealers including names, nicknames, phone numbers and residences used by the drug dealers as well as information regarding specific drug transactions, and the officer-affiant corroborated "much of th[is] information[.]" *Id.* (quoting the affidavit). Additionally, the officer-affiant orchestrated a "controlled purchase of drugs" with this informant from the defendant. *Id.* Further, within the four months before the search warrant was issued, "several other informants" stated defendant Christian was a large scale drug dealer and that they had purchased large quantities of heroin and crack cocaine from him at 618 Grandville Avenue. Finally, the day that the search warrant was issued, officers observed one Rueben Thomas "'walk away from the area of 618 Grandville Avenue and leave the area in a vehicle.'" *Id.* (quoting the affidavit). Officers then stopped Thomas for a traffic violation and found 20 grams of heroin. Thomas denied being at 618 Grandville, but, "[c]rucially, the affidavit recounted that Thomas's denial was 'contrary to observations of the law enforcement officers.'" *Id.* (quoting the affidavit).

In commencing its analysis, the *Christian* Court stated, "one element of the affidavit was independently sufficient for probable cause: the surveillance of Reuben Thomas." *Id.* at 310. The critical issue in *Christian* was defendant Christian's assertion that "there was no 'nexus' between Thomas and 618 Grandville because the affidavit stated merely that officers saw Thomas 'walk away from the area of 618 Grandville,' rather than entering or leaving that residence." *Id.* (quoting the affidavit). However, the *Christian* Court noted that the affidavit included an assertion that "'Reuben Thomas . . . denied being at [the residence], *contrary to observations of the law enforcement officers*.'" *Id.* (quoting the affidavit). Regarding this statement in the affidavit of the officers' observations, the *Christian* Court explained, "[w]hile this is not a direct statement that Thomas was seen entering or leaving 618 Grandville, the law does not require such a direct statement. . . . 'Affidavits are not required to use magic words[.]'" *Id.* (quoting *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc)). The *Christian* Court concluded that these statements were sufficient to establish a nexus between illegal drug sales and 618 Grandville Avenue. *Id.* at 311-12.

In the present case, Defendant cites several court decisions as being factually similar and in support of his position; however, all of these "supporting" cases were decided *before* the 2019 en banc decision of *United States v. Christian*.[4] Further, the Court finds *Christian* on point. As was the case with the *Christian* affidavit, Detective Richmond's affidavit contains an assertion that officers saw Defendant Ward leave the place to be searched and controlled substances were immediately discovered in the vehicle driven by Defendant Ward:

> Ward was surveilled by Agents leaving [6601 Riggins Avenue] and traveling to 3401 Campbell Street without making any stops. Agents got out with Ward at 3401

---

[4] *See Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001) ("The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.") (citing *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir.1985)).

> Campbell Street due to him having an out of state warrant as well as driving on revoked. A search incident to arrest revealed ten Hydrocodone wrapped up in a napkin located in the driver side door handle. A Marijuana blunt was located in the center console of the vehicle.

[Doc. 17-1, Richmond Aff. ¶ 10].

Based on *Christian*, this information by itself is sufficient to connect illegal drug activity to 6601 Riggins Avenue and to establish probable cause to search the residence. *See* 925 F.3d at 310 ("one element of the affidavit was *independently sufficient* for probable cause: the surveillance of Reuben Thomas.") (emphasis added). Defendant asserts that the NSI Agents' discovery of ten hydrocodone pills in his vehicle does not support probable cause because there is no proof as to how the pills came to be in Defendant's car or whether the pills were ever located in Defendant's residence. Again, "[P]robable cause is not the same thing as proof." *Christian*, 925 F.3d at 310. The search warrant was being sought in connection with an investigation of Defendant's possession of "Heroin/Hydrocodone/Marijuana." [See Doc. 18, PageID #: 72, Par. 5]. The discovery in Defendant's car of ten loose hydrocodone pills with no accompanying prescription, which discovery took place immediately after Defendant left his residence, does connect Defendant to illegal drug activity at 6601 Riggins Avenue.

Moreover, Detective Richmond's affidavit contains even more than the *Christian* affidavit to show a nexus between drug activity and the place to be searched, *to wit*:

- Detective Richmond observed Defendant engaged in a hand-to-hand transaction, suggestive of a drug buy, and then observed Defendant drive to 6601 Riggins Avenue.

- NSI Agents observed Defendant make a hand-to-hand transaction, suggestive of a drug buy, with another person at 6601 Riggins Avenue.

- Defendant's revoked license, issued five months before his arrest, listed 6601 Riggins Avenue as Defendant's address.

- Detective Richmond stated that drug dealers will often carry small amounts of drugs to transactions but leave their larger stashes in other places.

Though Defendant has been particularly adept in pointing out the shortcomings of each piece of information *in isolation*, each piece of information is a "relevant data point in the 'totality of the circumstances' constellation, rather than an independent thing to be lined up and shot down one by one." *Christian*, 925 F.3d at 311. The Court concludes that Detective Richmond's affidavit, as a whole, provides substantial evidence to establish a fair probability that evidence of drug trafficking would be found at 6601 Riggins Avenue when the search warrant was issued on November 22, 2022.

C. **The Good Faith Exception Applies**

In the alternative, the Court finds that the good faith exception to the exclusionary rule applies in this case. In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court held that the exclusionary rule does not apply, even where a search warrant affidavit lacks probable cause, if the "evidence [was] seized in reasonable, good faith reliance on a search warrant that is subsequently held to be defective." *Christian*, 925 F.3d at 312 (quoting *Leon*, 468 U.S. at 905). An affidavit based merely on "suspicions, or conclusions, without providing some underlying factual circumstances regarding reliability, and basis of knowledge" is "bare-bones." *Christian*, 925 F.3d at 312 (quoting *United States v. Washington*, 380 F.3d 236, 241 n. 4 (6th Cir. 2004)). Stated another way, a bare-bones affidavit is one "so lacking in indicia of probable cause as to make an officer's belief in its existence objectively unreasonable." *Christian*, 925 F.3d at 312 (citation cleaned-up). Further, as regards the nexus issue and the good faith exception, "[a]n affidavit need only present '*some* connection, regardless of how remote it may have been.'" *Id.* (quoting *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017)). Detective Richmond's affidavit is not a bare-bones affidavit based merely on suspicions or conclusions. It contains police observations and concrete evidence

of drug trafficking. Consequently, the affidavit at issue meets the "low requirement" of the good faith exception. *Christian*, 925 F.3d at 313.

## IV. Conclusion

For the reasons stated herein, it is **RECOMMENDED** that Defendant Anthony Ward's Motion to Suppress [Doc. 17] be **DENIED**.

**ENTER.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE