UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | Case No. 1:24-cr-6 |
| v. | ) | |
| | ) | Judge Travis R. McDonough |
| ANTHONY WARD | ) | |
| | ) | Magistrate Judge Christopher H. Steger |
| | ) | |

**ORDER**

Before the Court is Defendant Anthony Ward's motion to suppress the evidence obtained during the search of his home. (Doc. 17.) United States Magistrate Judge Christopher H. Steger filed a report and recommendation, recommending that the Court deny the motion to suppress (Doc. 21) and Defendant timely objected (Doc. 22). The Court has conducted a de novo review of the record as it relates to Defendant's objections and, for the following reasons, will: (1) **OVERRULE** Defendant's objections to the report and recommendation (Doc. 22); (2) **ACCEPT** and **ADOPT** the report and recommendation (Doc. 21); and (3) **DENY** Defendant's motion to suppress (Doc. 17).

I. BACKGROUND

On November 22, 2022, Detective Josh Richmond of the Hamilton County Sheriff's Office ("HCSO") swore to an affidavit to obtain a search warrant for Defendant's home at 6601 Riggins Avenue, Chattanooga, Tennessee. (Doc. 17-1, at 4.) Richmond averred that the Hamilton County Sheriff's Office received a tip from a confidential informant ("CI") that Defendant was selling heroin. (*Id.*) No additional details on the tip or the CI were provided. (*See id.*) Additionally, Richmond averred that "in the last two months [he] [ ] observed what

appeared to be a hand-to-hand transaction between Ward and another male party at the Speedway on Shallowford Road," after which Defendant returned to his home. (*Id*.) On November 21, 2022, officers "were contacted by Georgia Authorities and informed they had active warrants for [] Ward for conspiracy to distribute heroin." (*Id*.) A day later, officers again "observed what appeared to be a hand-to-hand transaction" at Defendant's home. (*Id*.) Richmond averred that officers then observed Defendant leave his house and drive to 3401 Campbell Street without making any stops. (*Id*.) When Defendant stopped driving, the officers arrested him for driving on a revoked license and for the out-of-state warrants. (*Id*.) Richmond avers that the officers performed a search of Defendant's car and found a marijuana blunt and ten Hydrocodone pills in a napkin. (*Id*.)

Based off these sworn facts, Richmond obtained a search warrant for Defendant's home at 6601 Riggins Avenue, Chattanooga, Tennessee. (*Id*. at 1–2.) During the search, officers discovered 94.8 grams of suspected fentanyl, 7.1 grams of suspected marijuana, digital scales, a pouch containing baggies, a pill bottle with twenty-seven suspected hydrocodone pills, and approximately $9,700 in cash. (*Id*. at 5.)

Defendant moved to suppress the evidence, arguing that the search warrant was not supported by probable cause. (Doc. 17.) Magistrate Judge Christopher Steger found that the warrant was supported by probable cause and, regardless, the good faith exception applied (Doc. 21). Defendant timely objected (Doc. 23).

II. **STANDARD OF REVIEW**

This Court must conduct a *de novo* review of those portions of the report and recommendation to which objections are made. 28 U.S.C. § 636(b)(1)(C). *De novo* review does not, however, require the district court to rehear witnesses whose testimony has been evaluated

by the magistrate judge. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). The magistrate judge, as the factfinder, has the opportunity to observe and to hear the witnesses and to assess their demeanor, putting her in the best position to determine credibility. *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264–65 (6th Cir. 1999). A magistrate judge's assessment of witnesses' testimony is, therefore, entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003); *see also United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999). Here, Judge Steger did not hold a hearing but instead reached his decision based on the briefings of the parties. (*See* Doc. 21.)

### III. ANALYSIS

Defendant argues that Judge Steger erred by finding that (1) the affidavit established probable cause to search Defendant's house and (2) the good-faith exception applied. (*See* Doc. 22.)

#### A. Probable Cause

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "This constitutional protection requires a government agent to support an application for a search warrant with a substantial basis linking the evidence to be seized and the place to be searched." *United States v. McCoy*, 905 F.3d 409, 415 (6th Cir. 2018) (citing *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)). "When a government agent fails to support his application with this showing of probable cause, a judge should refuse to issue the warrant." *Id*.

"Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than a mere suspicion, . . . and is found to exist when there is a fair

3

Case 1:24-cr-00006-TRM-CHS    Document 24    Filed 12/02/24    Page 3 of 8    PageID #: 127

probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (internal quotations and citations omitted). "Search warrant affidavits must be judged based on the totality of the circumstances, rather than line-by-line scrutiny," and "[r]eview of the sufficiency of the evidence supporting probable cause is limited to the four corners of the affidavit. *Id*. (citations omitted). "[T]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008) (quoting *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000)). "[F]or a judicial officer to issue a warrant, law enforcement officials must present evidence from which a magistrate judge can conclude from the totality of the circumstances, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Jackson*, 470 F.3d at 306. Additionally, a magistrate judge's "determination of probable cause is afforded great deference and should be reversed only if arbitrarily made." *Id*. (citation omitted).

"Probable cause may come from a confidential informant's tip, when sufficiently detailed and corroborated by the independent investigation of law enforcement officers." *United States v. Stokes*, 742 F. App'x 947, 950 (6th Cir. 2018) (quoting *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998)). Courts must consider "the totality of the circumstances" in determining the value of an informant's information, including its "veracity," its "reliability," and the "basis of knowledge." *See id.* at 950–51 (citations omitted). If there is an "absence of any indicia of the informants' reliability" a court must "insist[] upon substantial independent police corroboration." *See Allen*, 211 F.3d at 976 (citations omitted).

Defendant argues that the CI's tip lacked all detail or information which would allow a court to conclude that the CI was reliable. (Doc. 22, at 2.) The Court agrees. Richmond avers

that unnamed agent with the Hamilton County Sheriff's Office received a tip from a CI stating that Defendant was selling Heroin. (Doc. 17-1, at 4.) That is the only detail Richmond provides about the CI or the tip. (*See generally id.*) Richmond did not provide any of the facts one would hope to see in an affidavit such as: (1) whether he was familiar with the CI; (2) if the CI had provided reliable information in the past; (3) when the tip was provided; or (4) the basis of the CI's knowledge of Defendant's alleged conduct. (*See generally id*.) Moreover, the tip did not even state that Defendant was selling heroin from his house, merely that he was selling it. (*Id*.) If the CI's tip was the only basis for the search warrant, the Court would have no issue concluding that the warrant was unsupported by probable cause.

However, the CI's tip was not the only part of the affidavit that established probable cause that Defendant was selling drugs from his home. As noted above, on November 21, 2022, officers "were contacted by Georgia Authorities and informed they had active warrants for [] Ward for conspiracy to distribute heroin." (Doc. 17-1, at 4.) Richmond further averred that police observed Defendant engaged in a "hand to hand transaction" at a Speedway and at his house. (*Id*.) Finally, when police pulled over Defendant shortly after he left his house, they found ten hydrocodone pills and a marijuana blunt in the car. (*Id*.) Taking these facts together, and considering the "great deference" it must give to the issuing judge, the Court cannot say that the search warrant was not supported by probable cause. *Jackson*, 470 F.3d at 306. Furthermore, though this affidavit lacks many details one would desire, that is not the measure of its adequacy. *See Fowler*, 535 F.3d at 415 ("[T]he affidavit is judged on the adequacy of what it does contain, not on what it lacks").

### B. Good Faith Exception

The Supreme Court held in *United States v. Leon*, 468 U.S. 897, 906, 913 (1984), that

even where a search warrant affidavit lacks probable cause, the evidence will not be excluded if it "[was] seized in reasonable, good faith reliance on a search warrant that is subsequently held to be defective." The good faith exception does not apply if the affidavit used to obtain the warrant is "bare bones." *United States v. Soto*, 794 F.3d 635, 646 (6th Cir. 2015). An affidavit is "bare bones" if it "merely states suspicions, or conclusions, without providing some underlying factual circumstances regarding reliability, and basis of knowledge." *United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019) (quoting *United States v. Washington*, 380 F.3d 236, 241 n. 4 (6th Cir. 2004)). An affidavit will not be found to be bare bones unless it is "so lacking in indicia of probable cause as to make an officer's belief in its existence objectively unreasonable." *Id.* (cleaned up).

Here, the affidavit does more than state Richmond's conclusion that Defendant was selling drugs at his home. As noted above, the affidavit supports this conclusion with evidence of: out-of-state warrants, an observed hand-to-hand transaction at Defendant's home, and the fact that Defendant was found to possess drugs shortly after leaving his home. (*See* Doc. 17-1.) Because the warrant is not "bare bones," the good-faith exception applies.

## IV. CONCLUSION

For the above-stated reasons, Defendant's objections to Judge Steger's report and recommendation (Doc. 22) are **OVERRULED**. The Court will **ADOPT** the report and recommendation (Doc. 21.) Accordingly, Defendant's motion to suppress is **DENIED** (Doc. 17.) Additionally, the following new trial schedule is **ORDERED**:

1. Plea Bargaining shall be concluded by **January 13, 2025**, and any written agreement shall be executed by said date.

2. All motions shall be filed no later than **January 13, 2025**.

3. All requests for jury instructions shall be submitted no later than **January 27, 2025**. The parties shall confer and submit a joint proposal for jury instructions. Before submitting the joint proposal to the Court, the parties must attempt to resolve any disagreements. To the extent there are disagreements as to specific instructions that cannot be resolved, the parties should provide competing instructions in their joint proposal. All jury instructions in the joint proposal, including agreed instructions and competing instructions, shall be supported by citations of authority. A copy of the proposed jury instructions should be sent in Microsoft Word format to **mcdonough_chambers@tned.uscourts.gov**.

4. A final pretrial conference shall be held before the United States District Judge at **3:00 p.m.** on **January 27, 2025**, in Chattanooga, Tennessee. At or before the final pretrial conference, all parties shall provide a notebook to the Court with exhibits they expect to offer during their cases-in-chief. Each party should also file a written submission advising the Court: (1) how and by whom each document will be authenticated, and (2) the theory of admissibility for the document, with appropriate references to the Federal Rules of Evidence. At the final pretrial conference, the parties should also be prepared to advise the Court whether they intend to offer any out-of-court statements as evidence beyond what is reflected in the exhibit notebook and be prepared to explain why each statement is not barred by the rule against hearsay, the Confrontation Clause, or any other basis. The parties should also be prepared to discuss evidence relating to a crime, wrong, or other act by the defendant, whether that evidence is admissible under Federal Rule of Evidence 404(b)(2), and whether the Government has given appropriate notice. The parties shall also disclose to one another and to the Court the technology they intend to use in the courtroom during the trial and how they intend to use it (e.g., display equipment, data storage, retrieval, or presentation devices). This disclosure shall list: (1) the

equipment the parties intend to bring into the courtroom to use and (2) the equipment supplied by the Court the parties intend to use. Further, the parties shall disclose to one another the content of their electronic or digital materials by the time of the final pretrial conference and shall confirm the compatibility/viability of their planned use of technology with the Court's equipment by the final pretrial conference. General information regarding equipment supplied by the Court is available on the Eastern District of Tennessee website (**www.tned.uscourts.gov**). Specific questions about Court-supplied equipment should be directed to the courtroom deputy (directory available on website).

     5.     The trial of this case will be held before the United States District Judge and a twelve-person jury beginning on **February 3, 2025, at 9:00 a.m.** in Chattanooga, Tennessee. If this case is not heard immediately, it will be held in line until the following day or any time during the week of the scheduled trial date.

     **SO ORDERED.**

     /s/ *Travis R. McDonough*
     **TRAVIS R. MCDONOUGH**
     **UNITED STATES DISTRICT JUDGE**